[NOT FOR PUBLICATION]                                    [Doc. No. 23]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

---

JACOB STILLINGS,

               Plaintiff,

    v.                                       Civil No. 06-4888 (RMB)

CORRECTIONAL MEDICAL SERVICES,           **OPINION**
INC., et al.,

               Defendants.

---

Appearances:

    Rosemary Pinto
    Feldman & Pinto
    1604 Locust Street, 2R
    Philadelphia, PA 19103
        Attorney for Plaintiff, Jacob Stillings.

    James R. Birchmeier
    Powell, Birchmeier & Powell, Esqs.
    1891 State Highway 50
    P.O. Box 582
    Tuckahoe, NJ 08250-0582

    Sarah Brie Campbell
    Office of the New Jersey Attorney General
    Department of Law & Public Safety
    P.O. Box 112
    Trenton, NJ 08625
        Attorneys for Defendants, New Jersey Department of
    Corrections, and Commissioner George Hayman.

    Timothy M. Crammer
    Crammer, Bishop, Marczyk & O'Brien, PC
    508 New Jersey Avenue
    Suite B3
    Absecon, NJ 08201
        Attorney for Defendants, Correctional Medical Services

1

and Jon Hershkowitz.

**BUMB,** United States District Judge:

This matter comes before the Court upon a motion to dismiss in lieu of an answer by Defendants, the New Jersey Department of Corrections ("NJDOC") and Department Commissioner George Hayman. Plaintiff, Jason Stillings, a state inmate, filed a Complaint in this Court alleging that the defendants violated his constitutional rights, specifically those under the Eighth Amendment.  Defendants' arguments will be discussed below.

I.   Statement of Facts

On May 6, 2004, Plaintiff, a state inmate, fell during a game of handball and injured his right wrist.  The next day, Stillings was evaluated by Dr. Jon Hershkowitz.  Dr. Hershkowitz gave the plaintiff an ACE wrap, Motrin and scheduled an x-ray. Dr. Hershkowitz requested that Stillings return for a follow-up in two weeks.  On May 11, 2004, the plaintiff underwent an x-ray. Ten days later the x-ray results revealed that Stillings had indeed fractured his right wrist.  Dr. Hershkowitz prescribed a splint for the wrist and a follow-up x-ray in three weeks.  On June 15, 2004, the plaintiff was given a second x-ray.  The results revealed evidence of a delayed union of the bone.  The next day Stillings was referred to an Orthopedist and his work detail was restricted for one month.  On July 22, 2004, the

plaintiff's work restrictions were extended.

On August 5, 2004, the orthopedist recommended that Stillings undergo surgery.  Surgery was originally scheduled for August 25, 2004, but was postponed because Plaintiff has an oral infection.  On September 9, 2004, the plaintiff refused a trip to the orthopedic specialist because he had a tooth infection.

On October 20, 2004, Mr. Stillings underwent surgery for his right wrist; afterwards he was given an ACE bandage and medicine for the pain.  On October 26, 2004, the plaintiff was given a follow up examination by Dr. Hertzkowitz.

On November 18, 2004, plaintiff went for an orthopedic consultation and a full cast was applied to his wrist.  On December 10, 2004, Stillings complained to Dr. Hertzkowitz that his cast was too tight.  Dr. Hertzkowitz noted that the cast did not seem too tight and that he wanted to follow the orthopedist's plan so that the plaintiff may have the best chance to heal.  On January 5, 2005, the plaintiff's cast was replaced with a splint because the cast was loose and dirty.

On January 4 and 10 , the plaintiff was sent to St. Francis Medical Center for a scan of his wrist but the hospital equipment was out of service.  On January 19, 2005, the plaintiff underwent a CAT scan of his wrist.  The results indicated that there was still an area of mild lucency at the fracture site.

On February 3, 2005, plaintiff was sent for an orthopedic

consultation.  At the consultation, it was discovered that the fracture line in the plaintiff's wrist was still "faintly visible" and a short arm cast was applied.

On March 18, 2005, an orthopedist recommended a bone graft to fuse the fracture in the plaintiff's wrist.  On March 25, 2005, Dr. Hertzkowitz recommended that the plaintiff proceed with a bone graft procedure.  Plaintiff indicated that he wished to discuss his options with his mother.  On March 30, 2005, the plaintiff indicated that he was interested in trying a bone stimulator unit.  On April 12, 2005, the plaintiff began using an EBI bone healing system after instruction by an EBI representative.

On June 09, 2005, an x-ray was performed on Stillings right wrist.  The x-rays revealed that the fracture line was still visible; as a result, a single screw was transfixed in Stillings' wrist.  On June 24, 2005, the plaintiff was treated for pain in his wrist.  On July 26, 2005, an x-ray of the plaintiff's wrist revealed that the fracture was healing.

On August 15, 2005, the plaintiff indicated that he preferred to try another alternative treatment option, specifically a TENS unit, prior to surgery.  On September 22, 2005, plaintiff was given a new canvas splint with laces and indicated that it was comfortable.  On December 4, 2005, the plaintiff complained of pain in his right wrist when working in

4

cold temperatures.  As a result he was placed on work restrictions from extreme temperatures and heavy lifting.

As of January 1, 2006, Defendant George Hayman was appointed as the acting Commissioner of the New Jersey Department of Corrections.

On January 9, 2006, the plaintiff was placed on lower bunk only restriction.  On February 14, 2006, the plaintiff under went surgery to fuse the bones in his right wrist.  Upon his return to Riverfront State Prison, the plaintiff was placed in the prison infirmary.

On March 3, 2006, a short arm cast was applied to plaintiff's wrist during his orthopedic follow up.  On March 5, 2006, the plaintiff was treated for complaints of his cast being too tight.  On March 22, 2006, the plaintiff placed a sick call complaining about his cast, but the medical personnel noted that the cast was properly fit.  On March 27, 2006, plaintiff was treated for complaints of odor and requested the cast to be removed.

On March 30, 2006, the plaintiff was sent for an orthopedic consult and refused a short cast against medical advice.  The plaintiff was also housed in the prison infirmary to reduce injury due to improper immobilization.  On May 11, 2006, the plaintiff was given Motrin for complaints of wrist pain.  On June 15, 2006, plaintiff was sent for an orthopedic follow up.  From

5

June 28 through July 5, 2006, the plaintiff was admitted to the prison infirmary for an infection in his right wrist.

On October 12, 2006, plaintiff filed this Complaint alleging Eighth Amendment constitutional violations for medical deliberate indifference by the NJDOC, NJDOC Commissioner George Hayman, Clinical Medical Services (CMS) and several of its employees, as well as state law tort violations by the CMS defendants. The NJDOC defendants are only named in the claims brought pursuant to 42 U.S.C. § 1983.  The Complaint seeks an award of monetary damages against the NJDOC and against NJDOC Commissioner Hayman in his individual capacity.

Commissioner Hayman now moves to dismiss the Complaint for failure to state a claim and, alternatively, for summary judgment.

II.  Standard

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied if the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true, (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)(internal citations omitted). Moreover, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965 (internal citations omitted). A district court must accept any and all reasonable inferences derived from those facts. Unger v. Nat'l Residents Matching Program, 928 F.2d 1392 (3d Cir. 1991); Glenside West Corp. v. Exxon Co., U.S.A., 761 F. Supp. 1100, 1107 (D.N.J. 1991); Gutman v. Howard Sav. Bank, 748 F. Supp. 254, 260 (D.N.J. 1990). Further, the court must view all allegations in the Complaint in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Therefore, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the nonmovant, plaintiff has alleged "enough facts to state a claim for relief that is plausible on its face." Twombly, 127 S.Ct. at 1974. Only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint matter, are taken into consideration. Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896

F.2d 808, 812 (3d Cir. 1990).

III. Analysis

　　Defendant New Jersey Department of Corrections initially moves to dismiss Plaintiff's Complaint on the grounds that it is immune from suit under the Eleventh Amendment.  Plaintiff concedes this argument in his papers.  (Pl.'s Reply at 6). Accordingly, the Complaint against the New Jersey Department of Corrections will be dismissed.

　　Defendant George Hayman moves to dismiss the Complaint because Plaintiff has failed to state a claim. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-04, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); Rouse v. Plantier, 182 F. 3d 192 (3d Cir. 1999).  In order to establish a claim for violation of his right to adequate medical treatment, the plaintiff must have evidence of 1) a serious medical need; and 2) that the prison officials were deliberately indifferent to that need. Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).  Hayman argues that Plaintiff's Complaint fails to sufficiently allege that he was deliberately indifferent.

　　An injury is serious if it is of the kind that is diagnosed

8

by a physician as requiring treatment or one that is so obvious that a lay person could recognize the need for treatment. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). Plaintiff's Complaint alleges that he is still without use of his arm and cannot engage in his daily activities. (Pl.'s Reply at 4). Plaintiff also alleges he repeatedly saw and was treated, albeit grossly inadequately, for his injury. The defendant does not dispute that the plaintiff's injuries are serious. Therefore, at this stage, Plaintiff's Complaint is sufficient to support a claim that he has suffered a serious medical injury.

The second element, deliberate indifference, requires that the plaintiff show more than mere negligence or malpractice; he must show a reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). The Third Circuit has found deliberate indifference to exist when a prison official either 1) knows of a prisoner's need for medical treatment but intentionally refuse to provide it ; 2) delays necessary medical treatment for non-medical reasons; or 3) prevents a prisoner from receiving needed or recommended treatment. See Rouse, 182 F. 3d at 197. Prison officials can be held liable if they erect arbitrary and burdensome procedures that result in delays or outright denials of treatment of suffering inmates. Lanzaro, 834 F.2d at 347.

9

However, if a prisoner is in the care of medical personnel then state officials are generally justified in believing that the prisoner is in capable hands. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).   In Spruill, the Third Circuit reasoned that, "Inmate health and safety is promoted by dividing responsibility for various aspects among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this labor." Id.  Moreover, under such a regime, non-medical personnel would be given incentives not to delegate medical care to the physicians who are in the best position to help the injured inmate.   Id.   Thus, a prisoner must plead sufficient facts supporting a belief that the prison official had knowledge or a reason to know that medical staff were mistreating or not treating a prisoner.   Id.

Here, the plaintiff alleges that Hayman is the policymaker who is responsible for the procedures that treat the inmates' injuries.  He also alleges various policies that amount to deliberate indifference to Plaintiff's medical needs.   However, Plaintiff's Complaint does not allege that Hayman was aware of, or responsible for, the policies and procedures established and followed by the prisons medical staff.  Indeed, the only actual allegation in Plaintiff's pleading is that Hayman supervised the offending medical staff.  There is no allegation supporting the

belief that Hayman had the requisite deliberate indifference to Plaintiff's medical needs.  Plaintiff argues - but did not plead - that Hayman was responsible for reviewing the policies, but does not argue or allege that Hayman had reason to know or believe that the policies were deficient.  See Spruill, 372 F.3d at 236 ("[A] non-medical prison official will generally be justified in believing that the prisoner is in capable hands."). Thus, Plaintiff's Complaint fails because of the lack of factual allegations supporting the legal conclusion that Hayman was deliberately indifferent to Plaintiff's medical needs.

Accordingly, Plaintiff's Complaint fails to state a claim against Commissioner Hayman.  Because Defendant Hayman has not yet filed an answer, however, Plaintiff will be granted leave to amend his Complaint.  Of course, the amended complaint must plead sufficient factual allegations that would raise to more than a speculative level his entitlement to relief.[1]  See Twombly, 127 S.Ct. at 1965.

Finally, Defendant moved in the alternative for summary judgment.  Summary judgment is appropriate when the record shows there are no material facts in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

---

[1]     Defendant raises in his reply papers the fact that Defendant Hayman had no personal involvement because he was not Commissioner until after the events in question.  If true, it seems this claim for relief would fail as to this defendant.

Here, discovery has not even commenced because Defendant Hayman has yet to file his Answer.  Additionally, Plaintiff objects that summary judgment is inappropriate because the failure to commence discovery impedes his ability to produce contrary evidence.  The Court agrees.  "It is a first principle of federal civil procedure that litigants 'are entitled to discovery before being put to their proof.'"  <u>Alston v. Parker</u>, 363 F.3d 229, 233 n.6 (3d Cir. 2004) (<u>quoting</u> <u>Bennett v. Schmidt</u>, 153 F.3d 516, 519 (7th Cir. 1998)).  At this stage of the proceedings summary judgment is inappropriate and will not be considered.

## IV.  Conclusion

For the reasons discussed above, the Complaint against the New Jersey Department of Corrections and Commissioner Hayman will be dismissed for failure to state a claim.  Plaintiff will be granted leave to file an amended complaint as to defendant Hayman.

Dated: July 20, 2007                    s/Renée Marie Bumb
                                        RENÉE MARIE BUMB
                                        United States District Judge